IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARRIS COUNTY, TEXAS,<br>Plaintiff,<br><br>v.<br><br>USA WASTE OF TEXAS LANDFILLS, INC.,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CA. No. _______________ |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Harris County, Texas ("Harris County") files this Original Complaint against USA Waste of Texas Landfills, Inc. ("USA Waste") and would respectfully show this Court as follows:

## I.
## INTRODUCTION

1. Harris County files this Complaint because USA Waste is the owner and operator of the Hawthorn Park Recycling and Disposal Facility ("Hawthorn", "Hawthorn Landfill," "Landfill," or "Site") that may present an imminent and substantial endangerment to Harris County under the environmental laws of the United States. The waste disposed at Hawthorn Landfill remains in place under intermediate cover. As that waste decomposes, it generates methane that has repeatedly reached the property boundary. In significant concentrations, methane is an explosive gas, and USA Waste has been unable or unwilling to control the methane emitting from

the Hawthorn Landfill. In addition, USA Waste has repeatedly resisted Harris County's and others' efforts to determine the cause of the methane exceedances and the County's efforts to determine what contaminants are present in the soil and water in and around the Hawthorn Landfill. Water that contacts the waste presents an imminent and substantial endangerment to health or the environment because it risks carrying harmful constituents into the surrounding soil and groundwater.

2. In 2023, USA Waste attempted to expand the permit for the facility.[1] Harris County protested that effort, and the presiding judge in that administrative case granted Harris County and others the right to conduct testing for environmental contaminants at the Site. Rather than comply with the presiding judge's order, USA Waste took the extraordinary step of dismissing its permit amendment and paying Harris County's expert fees and other litigation costs. In order to avoid allowing Harris County and others the right to inspect the Hawthorn Site and to test above and underneath the ground, USA Waste voluntarily agreed to pay its opponents in the Permit Action hundreds of thousands of dollars.

3. The methane emissions from the Hawthorn Landfill are actionable because they constitute a violation of environmental rules and regulations, and those emissions may also constitute an imminent and substantial endangerment to Harris County, the public, and the environment. Harris County has provided USA Waste with the required notice before filing this Complaint, and has met with USA Waste on more than one occasion in an effort to address Harris County's concerns.

4. To protect its real and concrete interests discussed below and the people and environment of Harris County, Harris County files this Complaint pursuant to the Citizen Suit

---

[1] USA Waste of Texas Landfills, Inc. SOAH Docket No. 582-23-22764, TCEQ Docket No. 2023-0265-MSW, Permit No. 2185A ("Permit Action").

provisions found in the Resource Conservation and Recovery Act ("RCRA") at 42 U.S.C. § 6972 so that it may investigate and obtain the necessary injunctive relief from this Court along with all other rights and remedies to which it may be justly entitled.

## II.
## GENERAL STATEMENT OF FACTS

5. Harris County brings this Citizen Suit under RCRA, 42 U.S.C. § 6972(a)(1)(A) and (B), against USA Waste, the owner and operator of the Hawthorn Landfill. The County seeks declaratory and injunctive relief to stop USA Waste's ongoing violations of RCRA and eliminate the imminent and substantial endangerment to health and the environment caused by USA Waste's handling and disposal of solid waste at the Site, together with litigation costs, including attorneys' fees and expert witness fees, civil fines, and such other relief as the Court deems appropriate.

6. Hawthorn is a 171.6-acre Type IV solid waste disposal facility located at 10550 Tanner Road in Houston, Harris County, Texas. The Landfill consists of three blocks: East, Center, and West. Permitted waste disposal began in the West Block by 1977. The East Block received a municipal solid waste permit in 1982, and the Center Block followed in 1994 when the three sections were consolidated under one permit. Hawthorn is functionally inactive, with less than 2% of its permitted capacity remaining.[2] After decades of disposal, Hawthorn approaches the end of its operating life with recurring methane exceedances, longstanding and newly identified hazardous constituents in groundwater, dependence on a depressurization system whose ongoing necessity remains unexplained, and unresolved questions about the nature and composition of waste buried beneath portions of the Site.

7. The waste disposed at Hawthorn remains in place under intermediate cover. As that waste decomposes, it generates methane that has repeatedly reached the property boundary.

---

[2] USA Waste's 2013 Business Closeout Plan; 2024 Annual Year in Review.

Water that contacts the waste presents an imminent and substantial endangerment to health or the environment because it risks carrying harmful constituents into the surrounding soil and groundwater.

8. Since 2013, USA Waste has reported elevated concentrations of iron and total organic carbon in multiple wells.[3] In 2024, increasing concentrations of iron and total organic carbon at MW-21 prompted USA Waste to test that well beyond the Landfill's routine monitoring program.[4] The supplemental sampling detected arsenic and barium at concentrations exceeding the maximum contaminant levels.[5] These groundwater conditions exist alongside Hawthorn's longstanding methane problem. USA Waste has reported numerous methane readings above the regulatory limit at Hawthorn's property-boundary gas probes for three decades, from 1995 through 2025, including in 2023, 2024, and 2025.[6]

9. The groundwater and methane problems persist at the Hawthorn Landfill that is near its permitted waste capacity, lacks final cover, and has not been closed.[7] The Site's disposal history began before federal regulation of solid waste disposal, with excavations recorded as early as 1964. The large center portion of the Hawthorn Landfill was an unregulated sand mine, and unauthorized dumping occurred for years before the Site was permitted in 1994. USA Waste cannot fully account for the nature and composition of the waste buried in portions of the Hawthorn

---

[3] 2025 Annual Groundwater Monitoring Report, dated February 13, 2026, § 5.2, p. 7.

[4] April 12, 2024 notification letter from USA Waste to TCEQ, p. 1.

[5] Appendix I to 40 C.F.R. Part 257; TCEQ's March 21, 2025 letter, p. 2.

[6] 2008: APP-00001827 (June 2008 notice to TCEQ, GP-15 at 54.4% and 46.3%) (notice fn. 12); 2010 to 2013; MSW/TCEQ/8.28.13 Implementation Report from USA Waste; PIR 016768 (fns. 13, 14) 2023 to 2025; correspondence between USA Waste and TCEQ (fn. 7). Harris County references to APP-0000XXX are to documents that USA Waste previously produced in the Permit Action.

[7] Dep. of Steven Lee "Steve" Jacobs 20:10–15 (Oct. 26, 2023); Dep. of Donald James Smith 14:3–6 (Nov. 1, 2023); Jacobs Dep. 35:9–14 (Oct. 26, 2023); Jacobs Dep. 147:15–18; Dep. of Heather Lehrmann 209:9–11 (Oct. 30, 2023).

Landfill, nor can it confirm that all historical waste-disposal areas are lined or identify the type of liner beneath each area.[8]

10. The Hawthorn Landfill's history bears on the conditions that exist at the Site which form, in part, the basis of the County's RCRA claims. USA Waste is operating the Hawthorn Landfill as an open dump by allowing methane generated by the Site to exceed the lower explosive limit at the property boundary and by contaminating an underground drinking water source beyond the solid waste boundary. Further, USA Waste has also contributed and continues to contribute to the handling and disposal of solid waste under conditions that may present an imminent and substantial endangerment to health or the environment.

11. The Hawthorn Landfill threatens Harris County’s property, infrastructure, and operations, including County property across Tanner Road and the County’s roadway, right-of-way, and drainage interests along that corridor. The County’s planned Tanner Road improvements include roadway reconstruction, underground storm drainage, and a detention basin and pump station.

12. Hawthorn’s recent permitting history underscores the need for this suit and Harris County’s request for this Court’s intervention.

13. In 2021, USA Waste applied for a major permit amendment to expand the Landfill. On May 23, 2023, the Texas Commission on Environmental Quality granted Harris County’s request for a contested case hearing and referred the application to the State Office of Administrative Hearings (“SOAH”) to consider 23 issues of contested fact and law.[9] Although not disclosed during the contested case proceeding, USA Waste measured methane at 6 times the

[8] Jacobs Dep. 47:7–15; Id. at 27:24–28:3; Lehrmann Dep. 46:1–20 (Oct. 30, 2023); Lehrmann Dep. 22:10–16; Id. at 25:1–15; Jacobs Dep. 26:14–16; Rivette Dep. 126:23–127:19, 127:20–128:24.

[9] The TCEQ granted party status to nine protestants in the Permit Action.

regulatory limit on December 20, 2023. On January 2, 2024, the Administrative Law Judge, for the second time, denied USA Waste's attempt to block Harris County's and other protestants' inspection and testing of the Landfill and ordered that the inspection and testing could proceed. Nine days later, on January 11, 2024, USA Waste withdrew its application to amend the permit.

14. Without the Court's intervention, the Hawthorn Landfill will continue to violate RCRA, endanger health and the environment, and threaten Harris County's property and interests and those of the surrounding community and environment.

## III.
## PARTIES

15. Plaintiff Harris County is a political subdivision of the State of Texas and a "person" within the meaning of RCRA, 42 U.S.C. § 6903(15).

16. Defendant USA Waste of Texas Landfills, Inc. is a Delaware corporation conducting business in Texas and a "person" within the meaning of RCRA, 42 U.S.C. § 6903(15).[10]

17. USA Waste owns and operates the Hawthorn Landfill, located at 10550 Tanner Road, Houston, Harris County, Texas. USA Waste holds Municipal Solid Waste Permit No. 2185 for the Landfill, a Type IV municipal solid waste disposal facility regulated by the Texas Commission on Environmental Quality.

18. USA Waste may be served with process through its registered agent, C T Corporation System, at 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

---

[10] USA Waste of Texas Landfills, Inc. was formerly known as Sanifill of Texas, Inc., which changed its corporate name to USA Waste of Texas Landfills, Inc. on January 15, 1998. See Certificate of Secretary of State of Delaware (Feb. 9, 1998), attached to Application for Amended Certificate of Authority (filed Feb. 12, 1998), at 2.

## IV.
## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and RCRA § 7002(a), 42 U.S.C. § 6972(a). Harris County brings its claims under 42 U.S.C. § 6972(a)(1)(A) and (B).

20. This Court has personal jurisdiction over USA Waste because it owns and operates the Hawthorn Park Landfill at 10550 Tanner Road, Houston, Harris County, Texas. The County's claims arise from USA Waste's ownership and operation of the Hawthorn Landfill and its handling and disposal of solid waste at that location.

21. This Court has authority under 42 U.S.C. § 6972(a) to enjoin the violations alleged in this Complaint and to order USA Waste to take the action necessary to abate the alleged imminent and substantial endangerment to health or the environment. The Court also has authority to grant declaratory and further relief under 28 U.S.C. §§ 2201 and 2202 and to award costs of litigation, including reasonable attorney and expert witness fees, under 42 U.S.C. § 6972(e).

22. Venue is proper in the Southern District of Texas under 42 U.S.C. § 6972(a) because the violations alleged in this Complaint have occurred and are occurring in this district, and the alleged endangerment is present and may occur in this district. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the County's claims occurred in this district, and the Landfill that is the subject of this action is located here.

23. This action is properly brought in the Houston Division because the Landfill is located in Harris County, which lies within this division. 28 U.S.C. § 124(b)(2).

## V.
## NOTICE AND CONDITIONS

24. Harris County's notice dated June 26, 2026 ("Notice Letter") (supplemented on September 16, 2026) identifies USA Waste as the owner and operator of Hawthorn and gives notice of the County's intended claims under 42 U.S.C. § 6972(a)(1)(A) and (B). The Notice Letter describes the methane and groundwater conditions underlying the County's open-dumping claims and the conditions alleged to present an imminent and substantial endangerment to health or the environment. A copy of the Notice Letter is attached as Exhibit A and the September 16, 2026 letter is attached as Exhibit B.

25. On June 26, 2026, Harris County mailed copies of the Notice Letter to USA Waste's President, Domenica Farmer, USA Waste's Vice President and Secretary, Courtney A. Tippy, USA Waste's registered agent, C T Corporation System, the EPA Administrator, the EPA Region 6 Regional Administrator, the TCEQ Executive Director, the TCEQ Commissioners, the Director of TCEQ's Office of Waste, and the United States Attorney General. USA Waste received the notice on July 1, 2026, and the other recipients received the notice by July 10, 2026.

26. The 60-day notice period applicable to the County's claims under 42 U.S.C. § 6972(a)(1)(A) expired on September 8, 2026. The 90-day notice period applicable to the County's claim under § 6972(a)(1)(B) expired October 8, 2026. Harris County waited at least 90 days after service of the notice supporting each claim before filing this Complaint, and the notice periods required by 42 U.S.C. § 6972(b)(1)(A) and (b)(2)(A) have therefore expired. After receipt of the Notice Letter, representatives of USA Waste who had previously received the Notice Letter requested a meeting with Harris County to discuss the June 26, 2026 Notice Letter. Harris County's attorneys met with several representatives of USA Waste and its attorneys on July 30, 2026, and September 18, 2026, and conferred about the contents of the June 26, 2026 Notice Letter.

27. As of the filing of this Complaint, neither the EPA Administrator nor the State of Texas has commenced or is diligently prosecuting a civil or criminal action in a federal or state court to require compliance with the requirements at issue in the County's claims asserted in the Notice Letters or this Complaint. Harris County's claims are, therefore, not barred by 42 U.S.C. § 6972(b)(1)(B).

28. With respect to the endangerment alleged in this Complaint, the EPA Administrator is not diligently prosecuting an action under RCRA § 7003 or the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) § 106. EPA is not conducting a CERCLA § 104 removal action and has not incurred costs to initiate a remedial investigation and feasibility study while diligently proceeding with remedial action. Nor has EPA obtained a court order or issued an administrative order under RCRA § 7003 or CERCLA § 106 pursuant to which a responsible party is diligently performing the response work specified in 42 U.S.C. § 6972(b)(2)(B)(i)-(iv).

29. The State of Texas is not diligently prosecuting an action under 42 U.S.C. § 6972(a)(1)(B) to restrain or abate the endangerment alleged in this Complaint. Nor is Texas conducting a CERCLA § 104 removal action or undertaking the remedial investigation, feasibility study, and remedial action specified in § 6972(b)(2)(C)(i)-(iii). All statutory conditions required for Harris County to bring this Complaint have been met.

30. Upon filing, Harris County will serve a copy of this Complaint on the EPA Administrator and the United States Attorney General as required by 42 U.S.C. § 6972(b)(2)(F).

## VI. HARRIS COUNTY'S INTERESTS AND INJURIES

31. Harris County brings this action to protect its own property and its use, maintenance, and improvement of roadway, right-of-way, and drainage infrastructure in the Tanner Road

corridor adjoining Hawthorn. Harris County owns property south of Tanner Road within a few hundred feet from the Landfill.[11] In addition, Harris County holds the existing Tanner Road right-of-way along Hawthorn's southern side.

32. Harris County has responsibility, together with the City of Houston, for maintaining public drainage ditches along Tanner Road that receive runoff from several acres of Hawthorn.[12] County personnel and contractors work in those ditches to maintain them.

33. Harris County has retained engineers, obtained property surveys, and started the process of acquiring property interests for the Tanner Road improvement project, UPIN 23103MF2QC01, extending from the West Sam Houston Parkway North frontage road to approximately 350 feet east of Gessner Road. The project includes replacement of the existing two-lane asphalt roadway with a four-lane concrete boulevard, replacement of roadside ditch drainage with an underground storm sewer, sidewalks, and a detention basin and pump station. The project encompasses Tanner Road along Hawthorn's southern side.[13]

34. On October 18, 2022, Harris County Commissioners Court approved a professional engineering services agreement with Cobb, Fendley & Associates, Inc. for improvements to Tanner Road. On February 21, 2023, Commissioners Court approved an amendment expanding

---

[11] USA Waste of Texas Landfills, Inc., *Hawthorn Park Recycling and Disposal Facility, Permit Amendment Application, TCEQ Permit No. MSW-2185A*, Part I, Appendix IB, *Land Ownership Map and Land Owners List* (February 2021), landowner list p. 2, owner No. 16, and Figure I-B-1, *Land Ownership Map*; pages 4 and 21 of *05-February2021_HawthornPark_PermitApplication_Vol1_PtI_AppIB_and_IC Land Ownership List and Map.pdf.*

[12] *Hawthorn_Park_Fact sheet.pdf*, PDF page 3.

[13] Harris County Commissioners Court, Legislative File No. 23-1063, approved February 21, 2023; Harris County Commissioners Court, Legislative File No. 26-4994, approved August 6, 2026; *Joint Participation Interlocal Agreement between Harris County and the City of Houston*, recitals, p. 1, and attached *Project Funding Allocation Agreement*, p. 10. File: *26-4187-ILA-23103MF2QC01-Tanner Road-P3-7.9.26.pdf*, PDF pages 1 and 10; Harris County Engineering Department/Lupher, LLC, Tanner Road right-of-way survey sheets depicting Parcel 9. File**:** *26-0890-(PN)23103MF2QC01-TannerRd-P3-2-12-26.pdf*, PDF pages 15–16.

the study and design to include the segment from Triway Lane to approximately 350 feet east of Gessner Road.[14]

35. The County's responsibilities for the project include engineering and permitting, management, inspection and construction of the improvements through its contractor. The County also plans to maintain and repair the completed improvements within its right-of-way, including the detention basin and pump station.[15]

36. On August 6, 2026, Commissioners Court approved a public-necessity determination for the Tanner Road project and directed the Harris County Real Property Division to acquire 27 road-easement tracts for roadway construction.[16] Construction of the segment along Hawthorn's southern side is scheduled to begin in 2029.

37. The planned right-of-way expansion includes a proposed acquisition of a right-of-way interest in 0.4124 acres of USA Waste's property along the north side of Tanner Road, designated as project Parcel 9.[17] Parcel 9 lies approximately 650 feet from GP-1AR. The proposed right-of-way extends beyond the existing right-of-way into USA Waste's property.[18]

38. USA Waste has detected methane above the regulatory limit at GP-1AR, a property boundary compliance probe on the southern side of Hawthorn, on the dates alleged below. In September 2025, USA Waste enhanced the existing vent trench near GP-1AR by installing solar-

---

[14] Harris County Commissioners Court, *Agenda*, October 18, 2022, Item 26, Legislative File No. 22-6490, p. 4; and Harris County Commissioners Court, Legislative File No. 23-1063, approved February 21, 2023.

[15] *Joint Participation Interlocal Agreement between Harris County and the City of Houston*, § 1.A(i)–(iv), (vii), and (viii)(c), pp. 1–2; *26-4187-ILA-23103MF2QC01-Tanner Road-P3-7.9.26.pdf*, PDF pages 1–2.

[16] Harris County Commissioners Court, Legislative File No. 26-4994, *Public Necessity*, approved August 6, 2026, concerning Tanner Road, UPIN 23103MF2QC01.

[17] Harris County Engineering Department/Lupher, LLC, *Tanner Road Right-of-Way Survey*, Parcel 9 ownership and taking table.

[18] *26-0890-(PN)23103MF2QC01-TannerRd-P3-2-12-26.pdf*, PDF page 15.

powered fans intended to improve collection and venting of the detected methane.[19] GP-1AR is near the County's property and the County's road improvement project.

39. Methane generated by waste at Hawthorn presents a continuing threat of migration to the Tanner Road improvement project area and the subsurface areas where the County plans drainage improvements. The threatened injury to the County is damage to its infrastructure and impairment of its ability to construct, inspect, and maintain that infrastructure safely.[20]

40. Methane gas can move through soil and utility corridors and accumulate in enclosed underground structures.[21] The storm sewer the County plans to install along Hawthorn's southern side will be an underground structure. Methane accumulating with air at explosive concentrations creates a fire and explosion hazard.[22]

41. Landfill-related groundwater contamination, including those described below, threatens Harris County's property south of Tanner Road and the subsurface work areas for its drainage project.

42. Groundwater beneath Hawthorn has historically flowed southward, but at times USA Waste's operations at Hawthorn have affected the direction of the groundwater flow.

---

[19] *Hawthorn Permit History Modifications and Temporary Authorizations(1).pdf*, PDF page 19; TCEQ letter to Keith Sharon, August 25, 2025, *Landfill Gas Remediation Plan for GP-1AR, July 2025*, Tracking No. 31783207, p. 1. It reports the July 30, 2025 readings of 11.2 percent and 8.3 percent methane. Also, TCEQ letter to Andy Vance, October 17, 2025, *Landfill Gas Monitoring—Monthly Report for GP-4 and GP-1AR, August 2025*; *Hawthorn Landfill Gas Monitoring 2025(1).pdf*, PDF pages 34 and 5; Biggs & Mathews Environmental, letter to Megan Henson, September 26, 2025, *GP-1AR/GP-4 Remediation Update/As-Built Submittal*, p. 1.

[20] Landfill Gas Management Plan, § 5.2, "Interceptor Trench System," printed p. 5-2, revised March 28, 2024, in *Hawthorn Permit History Modifications and Temporary Authorizations(1).pdf*, PDF page 20.

[21] Agency for Toxic Substances and Disease Registry, *Landfill Gas Primer: An Overview for Environmental Health Professionals* (November 2001), Chapter 3.

[22] TCEQ letter to Keith Sharon, January 3, 2025, *Landfill Gas Monitoring—Monthly Reports for GP-3 and GP-4, November 2024*; USA Waste, April 30, 2025 monitoring submission, attachment titled *Q1 2025 GP-4 Readings; May 23, 2025, Landfill Gas Monitoring—Quarterly Report for GP-4, First Quarter 2025.*

43. Harris County plans to excavate and install an underground storm sewer along Hawthorn's southern side and proposes to expand the right-of-way onto USA Waste's property. Contamination entering these areas would impair the County's use of its land and its ability to construct, inspect, and maintain the drainage system safely.

44. The relief the County seeks will redress these threatened injuries. An order requiring USA Waste to identify and control the sources of methane at Hawthorn, and to eliminate or control its migration pathways, will reduce the threat of methane reaching County infrastructure and work areas. Investigation and corrective action for groundwater contamination will prevent or reduce the migration of that contamination toward County property, drainage infrastructure, and subsurface work areas. Closure, final cover, and other containment measures will limit the entry of water into the waste and the uncontrolled release of landfill gas. The requested relief will protect the County's property and allow it to carry out the roadway and drainage work safely.

## VII.
## CLAIMS FOR RELIEF

### Count I:
### Open Dumping Based on Methane at the Property Boundary
### 42 U.S.C. §§ 6945(a), 6972(a)(1)(A); 40 C.F.R. §§ 257.1, 257.3-8(a)(2)

45. Harris County incorporates the paragraphs above in support of this Count.

46. Harris County seeks to enforce the open-dumping prohibition in 42 U.S.C. § 6945(a) through the methane criterion in 40 C.F.R. § 257.3-8(a)(2), as authorized by 42 U.S.C. § 6972(a)(1)(A).

47. 40 C.F.R. Part 257 applies to Hawthorn. Its permitted waste streams include construction and demolition debris, brush, rubbish, and certain industrial solid wastes, and it is not

authorized to receive household waste.[23] However, the Landfill's history includes the disposal of waste not authorized for a Type IV landfill. For example, in 1987, the Texas Department of Health found that the predecessor West Block facility had accepted large quantities of putrescible waste in violation of state regulations.[24]

48. USA Waste owns and operates Hawthorn and engages in solid-waste-management practices and the disposal of solid waste at the Landfill.

49. RCRA prohibits any solid-waste-management practice or disposal of solid waste that constitutes open dumping. That prohibition is enforceable through RCRA's citizen-suit provision against a person alleged to be in violation of a regulation or prohibition that has become effective under RCRA.[25]

50. EPA's criteria for determining whether a solid-waste-disposal facility or practice constitutes an open dump are set forth in 40 C.F.R. Part 257. A facility that fails to satisfy any of the criteria in §§ 257.1 through 257.4 is considered an open dump, and a practice that fails to satisfy any of those criteria constitutes open dumping; both are prohibited under RCRA § 4005.[26]

51. Section 257.3-8(a) establishes limits on methane generated by a solid-waste-disposal facility or practice. It prohibits methane concentrations from exceeding 25 percent of the lower explosive limit in facility structures and from exceeding the lower explosive limit at the property boundary.[27] Section 257.3-8(e) defines "explosive gas." Methane's lower explosive

---

[23] See 40 C.F.R. § 258.2.

[24] Letter from Hector H. Mendieta, P.E., Dir., Div. of Solid Waste Mgmt., Tex. Dep't of Health, to Larry Martin, President, W. Contractors Serv., Inc., at 1 (Aug. 5, 1987) (Permit No. 1643) (Ex. 1); Tex. Nat. Res. Conservation Comm'n, *Municipal Solid Waste Permit No. MSW-2185*, at 9 (Apr. 12, 1994) (incorporating Permit No. 1643 into Permit No. 2185) (Ex. 3).

[25] 42 U.S.C. § 6972(a)(1)(A).

[26] 40 C.F.R. § 257.1(a)(1)-(2).

[27] *Id.* § 257.3-8(e)(3).

limit is five percent by volume.[28] Thus, § 257.3-8(a)(2) prohibits methane generated by the facility from exceeding five percent by volume at the property boundary.[29]

52. USA Waste's landfill gas management plans, remediation plans, landfill gas monitoring reports, landfill gas analyses, laboratory results, and other records submitted to TCEQ or maintained for the Landfill from 1995 to the present document methane exceedances at property-boundary and associated compliance monitoring probes, including GP-3, GP-4, GP-1AR, GP-11, GP-15, and OP-1 through OP-5. TCEQ's historical investigations also document methane exceedances at MGP-6, MGP-8, and MGP-23. In response to recurring methane exceedances, TCEQ required intensified monitoring at additional probes, including GP-10, GP-11, GP-12, GP-15, GP-22, and OP-1 through OP-5, under a September 15, 2010 permit modification. The Landfill's gas management program also identified GP-13, GP-14, and GP-27 for monthly monitoring. Monthly monitoring remained necessary at various locations for years despite repeated corrective measures.[30]

---

[28] Agency for Toxic Substances and Disease Registry, *Landfill Gas Primer: An Overview for Environmental Health Professionals*, ch. 3, "Landfill Gas Safety and Health Issues" (Nov. 2001) (methane LEL is 5% by volume).

[29] 40 C.F.R. § 257.3-8(a)(2), (e)(3), and (e)(5).

[30] *Tex. Comm'n on Env't Quality, Investigation Report, Investigation No. 147996, Hawthorn Park Landfill* 2–5 (May 15, 2003) (PIR 012471–012474); USA Waste of Tex. Landfills, Inc., *Supplemental Landfill Gas—Nature and Extent Study, Hawthorn Park Reclamation Project* 1–2 (June 30, 2008) (Doc. No. HP063008.02; APP-00001827–APP-00001828); Golder Assocs. Inc., *Forensic Gas Investigation of GP-11 to Determine Gas Source, Hawthorn Park Reclamation Project Landfill, Houston, Texas* 1–4 (July 6, 2009); Letter from Chandra S. Yadav, Eng'g Specialist, Tex. Comm'n on Env't Quality, to Heather C. Lehrmann, Waste Mgmt. of Tex., Inc. 1–2 (Aug. 17, 2011) (MSW Permit No. 2185; Tracking Nos. 14750118 & 14816852; #8661.2–#8661.3); Letter from Chandra S. Yadav, Tex. Comm'n on Env't Quality, to Heather C. Lehrmann, Waste Mgmt. of Tex., Inc. 1 (Aug. 28, 2013) (Landfill Gas Monitoring and Remediation Plan Implementation Reports; Tracking Nos. 17332809, 17332806, 17332817 & 17405853; #8605.2); Letter from Arthur Denny, Senior Scientist, Tex. Comm'n on Env't Quality, to Heather C. Lehrmann, Env't Prot. Manager, USA Waste of Tex. Landfills, Inc. 1 (Jan. 26, 2021) (Landfill Gas Monitoring—December 2020; MSW Permit No. 2185; Tracking No. 25817845; APP-00018448); Letter from Adam Schnuriger, Project Manager, Tex. Comm'n on Env't Quality, to Heather Lehrmann, USA Waste of Tex. Landfills, Inc. 1 (June 13, 2022) (Landfill Gas Monitoring Report—April 2022; Tracking No. 27510978); Letter from J. Heath Parker, P.E., Biggs & Mathews Env't, Inc., to Megan Henson, Tex. Comm'n on Env't Quality 1–2 (Feb. 16, 2024) (LFG Remediation Plan, Hawthorn Park Landfill, MSW Permit No. 2185) (documenting 32.5% methane at GP-3 on Dec. 20, 2023); Letter from Tex. Comm'n on Env't Quality to Andy Vance, USA Waste of Tex. Landfills, Inc. 1 (May 1, 2024) (Landfill Gas Monitoring—Monthly Reports for January and February 2024; Tracking Nos. 29606151 &

53. Hawthorn's solid-waste-disposal facility or practices generated the methane measured in the property-boundary exceedances described in this Complaint. USA Waste treated those exceedances as Hawthorn landfill-gas conditions and attempted to respond through the Landfill's gas remediation and monitoring program, including by installing and modifying gas-control measures designed to intercept and limit landfill-gas migration. USA Waste's efforts have been unsuccessful.

54. Hawthorn's methane problems date to the beginning of USA Waste's operation of the Landfill. TCEQ's predecessor granted the permit in 1994, and its records document methane exceedances and repeated unsuccessful efforts to control landfill gas beginning at least as early as 1995. By 2003, TCEQ found that Hawthorn already had a "history of methane gas exceedances," including exceedances reported in 1995, 1997, 1998, 1999, 2000, 2001, and 2002.[31]

55. The early exceedances marked the beginning of a long-running, continuing pattern. Over the years, USA Waste installed a series of systems in an attempt to control underground methane migration, including gas venting systems, gas collection and interceptor trenches, passive and powered vents, as well as increased monitoring. "Enhanced monitoring" necessitated by

---

29687184); Letter from Tex. Comm'n on Env't Quality to Andy Vance, USA Waste of Tex. Landfills, Inc. 1 (May 15, 2024) (Landfill Gas Monitoring—Monthly Reports for GP-3 and GP-4, March 2024; Tracking Nos. 29749366 & 29758950); Golder Assocs. Inc. & Biggs & Mathews Env't, *Landfill Gas Management Plan, Hawthorn Park Reclamation Project* §§ 3.1, 3.3, 4.3–4.5, 6.1 (rev. June 2024) (MSW Permit No. 2185); Letter from Tex. Comm'n on Env't Quality to Keith Sharon, USA Waste of Tex. Landfills, Inc. 1 (Sept. 9, 2024) (Landfill Gas Monitoring—Monthly Reports for GP-3 and GP-4, July 2024; Tracking Nos. 30068435 & 30068432); Letter from Lyndon Poole, Project Manager, Tex. Comm'n on Env't Quality, to Keith Sharon, USA Waste of Tex. Landfills, Inc. 1 (May 23, 2025) (Landfill Gas Monitoring—Quarterly Report for GP-4, First Quarter 2025; Tracking Nos. 31560118 & 30802746); Bullock, Bennett & Assocs., LLC, *Landfill Gas Remediation Plan, Hawthorn Park Landfill* (July 31, 2025) (MSW Permit No. 2185); Letter from Tex. Comm'n on Env't Quality to Keith Sharon, USA Waste of Tex. Landfills, Inc. 1 (Aug. 25, 2025) (Landfill Gas Remediation Plan for GP-1AR, July 2025; Tracking No. 31783207); Letter from Tex. Comm'n on Env't Quality to Andy Vance, USA Waste of Tex. Landfills, Inc. 1 (Oct. 17, 2025) (Landfill Gas Monitoring—Monthly Report for GP-4 and GP-1AR, August 2025; Tracking No. 31947251).

[31] Tex. Comm'n on Env't Quality, *Investigation Report, Investigation No. 147996*, Hawthorn Park Landfill 2–5 (May 15, 2003) (MSW Permit No. 2185; PIR 012471–012474).

methane exceedances appears to have been required more often than not throughout Hawthorn's history.

56. The problem TCEQ identified in 2003 has persisted at Hawthorn through the present. TCEQ found in its May 15, 2003 compliance investigation that the Landfill Gas Remediation Plan was "not effectively reducing LFG and bringing it near or below the regulatory limits." Then, as now, remedial measures failed to prevent recurring methane exceedances."[32]

57. For 30 years, Hawthorn has followed the same cycle: methane exceedances, revised remediation measures, and renewed exceedances. USA Waste has revised its Landfill Gas Remediation Plan at least 11 times without successfully coming into compliance with 40 C.F.R. § 257.3-8(a)(2).

58. The chronology below shows that cycle continuing despite those revisions:

**Selected Documented Methane Exceedances and Gas-Control Measures at Hawthorn[33]**

[32] Tex. Comm'n on Env't Quality, *Investigation Report, Investigation No. 147996*, Hawthorn Park Landfill 2–5 (May 15, 2003) (MSW Permit No. 2185; PIR 012471–012474).

[33] Tex. Nat. Res. Conservation Comm'n, *Summary of Inspection Findings, Hawthorn Park Landfill* 1 (May 31, 2000) (MSW Permit No. 2185; PIR 012489); Tex. Nat. Res. Conservation Comm'n, *Summary of Investigation Findings, Hawthorn Park Landfill* 1 (July 12, 2001) (MSW Permit No. 2185; PIR 012486); Letter from James R. Scheline, Div. Env't Compliance Manager, Waste Mgmt. of Tex., Inc., to Rama S. Yadav, Tex. Nat. Res. Conservation Comm'n 1–4 (Jan. 28, 2002) (Doc. No. HP012802.02; PIR 012497–012500); Tex. Comm'n on Env't Quality, *Investigation Report, Investigation No. 147996, Hawthorn Park Landfill* 2–5 (2003) (investigation conducted May 15, 2003; PIR 012471–012474); Metroplex Indus., Inc., *Landfill Gas Assessment Report, Hawthorn Park Reclamation Project* 1–3 (June 10, 2003) (Doc. No. 025102/4675; PIR 012506–012508); USA Waste of Tex. Landfills, Inc., *Supplemental Landfill Gas—Nature and Extent Study, Hawthorn Park Reclamation Project* 1–2 (June 30, 2008) (Doc. No. HP063008.02; APP-00001827–APP-00001828); Golder Assocs. Inc., *Forensic Gas Investigation of GP-11 to Determine Gas Source, Hawthorn Park Reclamation Project Landfill, Houston, Texas* 1–4 (July 6, 2009); Letter from Chandra S. Yadav, Eng'g Specialist, Tex. Comm'n on Env't Quality, to Heather C. Lehrmann, Waste Mgmt. of Tex., Inc. 1–2 (Aug. 17, 2011) (MSW Permit No. 2185; TCEQ Tracking Nos. 14750118 & 14816852; #8661.2–#8661.3); Letter from Tex. Comm'n on Env't Quality to Heather C. Lehrmann, Waste Mgmt. of Tex., Inc. 1 (Aug. 28, 2013) (Landfill Gas Monitoring and Remediation Plan Implementation Reports; TCEQ Tracking Nos. 17332809, 17332806, 17332817 & 17405853; #8605.2); USA Waste of Tex. Landfills, Inc., *Hawthorn Park Monthly Gas Monitoring Report* 1 (Dec. 21, 2021) (submitted to Tex. Comm'n on Env't Quality Jan. 6, 2022, MSW Permit No. 2185); Letter from Adam Schnuriger, Project Manager, Tex. Comm'n on Env't Quality, to Heather Lehrmann, USA Waste of Tex. Landfills, Inc. 1 (June 13, 2022) (Landfill Gas Monitoring Report—April 2022; TCEQ Tracking No. 27510978); Golder Assocs. Inc. & Biggs & Mathews Env't, *Landfill Gas Management Plan, Hawthorn Park Reclamation Project* §§ 3.1, 3.3, 4.3–4.5, 6.1 (rev. June 2024) (MSW Permit No. 2185; revision history includes May 2016).

| Period | Documented Methane Conditions | Response / Gas-Control Measures |
|---|---|---|
| 1995–1997 | MGP-8 measured 9.0% on June 25, 1995. TCEQ's predecessor also identified additional exceedances during February 1997 sampling at several West Block locations and one East Block location. | Hawthorn installed its first landfill-gas venting system in the West Block in August 1997. |
| 1998–2001 | TCEQ and its predecessor reported methane exceedances during every monthly monitoring event from September 1998 through October 1999, ranging from 7.0% to 48.3%. MGP-8 and MGP-23 exceeded the limit each month, and MGP-6 began reporting exceedances in March 1999. Additional exceedances occurred in 2000 and 2001. TCEQ and its predecessor issued property-boundary methane NOVs in 2000 and twice in 2001. | USA Waste continued work under its landfill-gas remediation program. The December 2001 NOV also addressed failure to fully implement and update the Landfill Gas Action Plan and incorporate it into the permit. |
| 2002–2003 | TCEQ found twenty property-boundary exceedances during eighteen sampling events from January 2002 through June 2003. MGP-6 had eighteen exceedances ranging from 21.5% to 58.9%; MGP-23 had two exceedances of 47.0% and 52.1%. | Hawthorn installed passive landfill-gas collection and venting trenches in the West and East Blocks in 2002. TCEQ subsequently found the existing remediation plan ineffective and required a more aggressive plan. In June 2003, Hawthorn proposed another gas-collection interceptor trench between MGP-6 and MGP-7 to reduce methane at MGP-6. |
| 2008 | In June 2008, USA Waste reported methane concentrations of 54.4% and 46.3% at GP-15, a property-boundary probe. OP-1, OP-2, OP-4, and OP-5 also recorded concentrations above 5% during June 2008, with OP-2 reaching 40.6%. | Remediation measures continued. Persistent methane concentrations resulted in expanded monthly monitoring at multiple boundary probes. |
| 2010–2013 | Elevated methane continued through 2013 at GP-11 and near GP-15 at OP-2 despite remediation efforts. | Because methane concentrations continued to exceed 5%, TCEQ required monthly gas monitoring beginning in 2010 at GP-11, GP-10, GP-12, GP-15, GP-22, OP-1, OP-2, and OP-3. Hawthorn continued remediation and monthly monitoring at the affected portions of the facility. |

| **Period** | **Documented Methane Conditions** | **Response / Gas-Control Measures** |
|---|---|---|
| 2016–2021 | Persistent methane concerns continued to affect Hawthorn's monitoring program and required continued collection and venting trenches, interceptor trenches, vents, solar vapor extraction. | USA Waste incorporated monthly monitoring into its 2016 Landfill Gas Management Plan for GP-10, GP-11, GP-12, GP-13, GP-14, GP-15, GP-22, and GP-27. Monthly monitoring of those property-boundary probes remained in place through at least 2021. |
| 2022 | By April 2022, Hawthorn had gone twenty-nine months without a reported exceedance. The physical landfill-gas remediation or control measures continued. | In June 2022, TCEQ advised that Hawthorn could return from monthly to quarterly monitoring. |

59. After seven years of intensified monitoring, Hawthorn finally returned to routine monitoring in 2022 only to be faced with the same problem with methane exceedances 18 months later at three different probes. On December 20, 2023, GP-3 recorded 32.5% methane—over 6 times the limit set forth in Section 257.3-8(e). USA Waste responded by installing a passive landfill-gas interceptor trench and three vent risers equipped with wind turbines. Methane at GP-3 later temporarily fell below the regulatory limit, and TCEQ authorized GP-3 to return to quarterly monitoring on November 4, 2024.

60. Methane exceeded the regulatory limit at GP-4 on March 13, 2024, measuring 13.4% at GP-4. USA Waste installed a passive landfill-gas interceptor trench near GP-4, but methane continued to exceed the limit: May 2024 concentrations included 5.4%, 7.9%, 12.8%, 6.5%, and 6.8%; June readings included 6.1% and 6.6%; and 24.1% in July 2024.[34] TCEQ authorized GP-4 to return to quarterly monitoring in January 2025, notwithstanding these exceedances.

61. One month later, GP-4 exceeded the methane limit again. It measured 13.7% methane on February 14, 2025 and 12.2% on March 14, 2025. GP-4 again returned to monthly

[34] TCEQ's September 9, 2024 letter, addressing the July 2024 monthly reports for GP-3 and GP-4.

monitoring. USA Waste subsequently added vertical landfill-gas vents near GP-4 and TCEQ authorized GP-4 to return to quarterly monitoring in August 2025.

62. The pattern then repeated at another probe. On July 30, 2025, GP-1AR measured 11.2% methane, or 8.3% after recalibration. USA Waste incorporated GP-1AR into the existing GP-3 and GP-4 remediation program, but GP-1AR exceeded the regulatory limit again on August 4, 2025, at 6.0%. USA Waste then installed solar-powered fans on the existing vent trench serving the area and continued monthly monitoring.

63. The source of those recurring exceedances remains unchanged: the buried waste that has generated landfill gas at Hawthorn for decades remains in place. USA Waste's efforts have failed to bring the Hawthorn Landfill into compliance with Section 257.3-8(e). The recurrence of methane exceedances after periods of compliance, despite repeated remediation and control measures, shows that USA Waste has not yet effectively controlled landfill-gas generation and migration and that property-boundary exceedances are reasonably likely to recur.

64. USA Waste has failed to maintain compliance with 40 C.F.R. § 257.3-8(a)(2), and its facility poses an imminent and substantial endangerment to health or the environment. Because methane generated by Hawthorn has repeatedly exceeded the LEL at the property boundary, it violates the criteria of 40 C.F.R. § 257.3-8(a)(2). Methane generated by Hawthorn has repeatedly exceeded the lower explosive limit at the property boundary, and the recurring pattern described above demonstrates a reasonable likelihood that those exceedances will recur. Hawthorn therefore fails the criterion in § 257.3-8(a)(2), making the facility an open dump and its practices open dumping under 40 C.F.R. § 257.1(a)(1) and (2), prohibited by 42 U.S.C. § 6945(a).

65. The methane violation injures and threatens the County's interests, including the Harris County lot across Tanner Road from the Landfill; the Tanner Road ditches, maintained by

Harris County, that receive a portion of the Landfill's drainage; the segment of Tanner Road, and the associated right-of-way and drainage features, that Harris County controls or maintains; and Harris County's local inspection authority relating to water, waste, and air compliance at Hawthorn.

66. Harris County seeks declaratory and injunctive relief requiring USA Waste to comply with 40 C.F.R. § 257.3-8(a)(2); to conduct a complete methane investigation and implement a corrective-action program; to install additional gas controls and monitoring points where necessary; to confirm the exact locations and status of all boundary and near-boundary gas probes; and to undertake the other measures, including closure, necessary to prevent methane generated by the Landfill from exceeding the lower explosive limit at the property boundary, together with all other relief authorized by RCRA.

**Count II:**
**Open Dumping Based on Contamination**
**of an Underground Drinking Water Source**
**42 U.S.C. §§ 6945(a), 6972(a)(1)(A);**
**40 C.F.R. §§ 257.1, 257.3-4(a)**

67. Harris County incorporates the prior paragraphs in support of this Count.

68. Harris County seeks to enforce the open-dumping prohibition in 42 U.S.C. § 6945(a) through the groundwater criterion in 40 C.F.R. § 257.3-4(a), as authorized by 42 U.S.C. § 6972(a)(1)(A).

69. 40 C.F.R. Part 257 applies to the Hawthorn Landfill as described above.

70. USA Waste owns and operates the Hawthorn Landfill and engages in solid-waste-management practices and the disposal of solid waste at the Site.

71. RCRA prohibits any solid-waste-management practice or disposal of solid waste that constitutes open dumping.[35] That prohibition is enforceable through RCRA's citizen-suit

[35] 42 U.S.C. § 6945(a).

provision against a person alleged to be in violation of a regulation or prohibition effective under RCRA.[36]

72. EPA's groundwater criterion provides that a facility or practice "shall not contaminate an underground drinking water source beyond the solid waste boundary" or beyond an alternative boundary specified under § 257.3-4(b).[37] The regulation defines "contaminate" to mean introducing a substance that would cause its concentration in groundwater to exceed the maximum contaminant level specified in Appendix I to Part 257 or would increase the concentration where it already exceeds that level.[38]

73. Section 257.3-4 defines an "underground drinking water source" to include an aquifer containing groundwater with less than 10,000 mg/L total dissolved solids.[39] An "aquifer" is a geologic formation, group of formations, or portion of a formation capable of yielding usable quantities of groundwater to wells or springs. Section 257.3-4 defines the "solid waste boundary" as the outermost perimeter of the solid waste as it would exist at completion of disposal activity.[40]

74. Layer II is the uppermost groundwater-bearing unit beneath Hawthorn. It consists of sands and silts beginning about 22 feet below ground surface, and portions of the Landfill extend into it. Hawthorn's approved groundwater-monitoring system includes sixteen wells, MW-6 through MW-21, that monitor groundwater in Layer II, and USA Waste's consultant reports that

---

[36] 42 U.S.C. § 6972(a)(1)(A).

[37] 40 C.F.R. § 257.3-4(a).

[38] *Id.* § 257.3-4(c)(2).

[39] *Id.* § 257.3-4(c)(4).

[40] 40 C.F.R. § 257.3-4(c)(5).

each of those wells produces enough groundwater for sampling.[41] Layer II qualifies as an aquifer and an underground drinking water source under § 257.3-4(c)(1) and (4).[42]

75. USA Waste's 2021 permit-amendment application identifies Layer II as the "Uppermost Aquifer."[43] Its 2025 AGMR confirms that Layer II is the uppermost groundwater-bearing unit at Hawthorn and reports groundwater conditions supporting its classification as an underground drinking water source under 40 C.F.R. § 257.3-4(c)(4).[44]

76. MW-21 is a designated point of compliance well located on the western edge of Hawthorn's West Block. MW-21 lies beyond the solid waste footprint and groundwater sampled at MW-21 is groundwater beyond that boundary.[45]

77. MW-21 drew increasing concern as iron and total organic carbon concentrations increased over several years. By December 2023, USA Waste reported iron at 28 mg/L and a continuing upward trend.[46] In February 2024, USA Waste expanded its testing at MW-21 to include metals and volatile organic compounds.[47] That testing detected chlorobenzene and reported elevated concentrations of arsenic and barium. USA Waste then sampled MW-21 again

---

[41] AECOM, *Groundwater Monitoring Report: 2025 Annual Monitoring Event, Hawthorn Park Type IV Landfill, Permit No. 2185* §§ 2.1–2.2, at 2 (Feb. 13, 2026).

[42] *Id.*

[43] USA Waste of Tex. Landfills, Inc., *Hawthorn Park Recycling and Disposal Facility Permit Amendment Application, TCEQ Permit No. MSW-2185A,* pt. II, § 11.1, at 18 (Feb. 2021).

[44] AECOM, *Groundwater Monitoring Report: 2025 Annual Monitoring Event, Hawthorn Park Type IV Landfill, Permit No. 2185* §§ 2.1–2.2, at 2 & app. A, MW-21 Detection Summary (Feb. 13, 2026).

[45] MW-21 is adjacent to gas probe GP-3, where methane was measured at 32.5% on December 20, 2023.

[46] AECOM, Groundwater Monitoring Report: 2023 Annual Monitoring Event, Hawthorn Park Type IV Landfill, MSW Permit No. 2185, § 5.2, at 7 (Feb. 19, 2024).

[47] Id. § 5.3, at 7; Under 30 TAC § 330.417(6), additional sampling and analysis may be required if a facility appears to be contaminating the uppermost aquifer.

in April, July, and October 2024.[48] USA Waste has denied Harris County access to conduct any other testing of the groundwater at the Hawthorn Landfill so that the County can identify any other chemicals of concern.

78. Hawthorn's permit required annual groundwater monitoring, but after conditions at MW-21 raised concern, USA Waste expanded the testing and began sampling the well quarterly. It also tested MW-21 for metals and volatile organic compounds that were not part of Hawthorn's routine annual monitoring program. USA Waste's decision to increase both the scope and frequency of testing reflects the need for closer investigation of groundwater conditions at MW-21.[49]

79. On February 14, 2024, USA Waste reported chlorobenzene at 5.8 µg/L, barium at 2,000 µg/L, and arsenic at 260 µg/L at MW-21. On April 5, 2024, USA Waste reported chlorobenzene at 4.9 µg/L, barium at 2,000 µg/L, and arsenic at 240 µg/L. During the four supplemental sampling events conducted on February 14, April 5, July 9, and October 17, 2024, chlorobenzene ranged from 3.7 to 5.9 µg/L, arsenic ranged from 170 to 260 µg/L, and barium ranged from 1,800 to 2,000 µg/L. Every arsenic and barium result reported for MW-21 in 2024 exceeded the applicable Appendix I limit.[50]

80. Appendix I to Part 257 specifies a maximum contaminant level of 0.05 mg/L, or 50 µg/L, for arsenic and 1.0 mg/L, or 1,000 µg/L, for barium. The arsenic concentrations measured

---

[48] USA Waste of Tex. Landfills, Inc., Notification of Groundwater Monitoring Results: MW-21 Supplemental Sampling, Hawthorn Park Landfill, MSW Permit No. 2185, at 1 (Dec. 17, 2024).

[49] Under 30 TAC § 330.417(6), additional sampling may be required if a facility appears to be contaminating the uppermost aquifer.

[50] USA Waste of Tex. Landfills, Inc., Notification of Groundwater Monitoring Results: MW-21 Supplemental Sampling, Hawthorn Park Landfill, MSW Permit No. 2185, at 2 tbl. 1 (Dec. 17, 2024).

at MW-21 in 2024 ranged from 3.4 to 5.2 times the applicable Part 257 value, and the barium concentrations ranged from 1.8 to 2.0 times that value.[51]

81. The December 2025 annual event reported iron at 27 mg/L, total organic carbon at 130 mg/L, total dissolved solids at 1,800 mg/L, and chlorobenzene at 4.1 µg/L.[52] The December 2025 annual groundwater monitoring did not include arsenic or barium at MW-21.

82. The groundwater conditions at Hawthorn are not merely historical. The waste remains in place, USA Waste continues to accept some additional waste, and Hawthorn remains active as described above without final cover or final closure. Groundwater continues to move through Layer II beneath the Landfill, and precipitation continues to infiltrate portions of the waste mass and carry waste-related constituents into Layer II groundwater.[53]

83. RCRA defines "disposal" as "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."[54]

---

[51] Harris County relies on arsenic and barium as the Appendix I exceedances supporting this Count. Chlorobenzene, cobalt, vanadium, iron, total organic carbon, and total dissolved solids are alleged as evidence of groundwater conditions at MW-21, not as separate Appendix I exceedances under § 257.3-4.

[52] Hawthorn's routine annual groundwater monitoring program did not include VOCs such as chlorobenzene. After supplemental testing at MW-21 detected chlorobenzene repeatedly in 2024, TCEQ directed USA Waste to continue analyzing MW-21 for chlorobenzene during the next sampling event. The December 2025 annual monitoring event therefore included chlorobenzene and again detected it, at 4.1 µg/L.

[53] *SCS Engineers, Business Closeout Plan, Hawthorn Park Reclamation Project* 2, 5–6 (Aug. 2013) (APP-00014456, APP-00014459–60); *Deposition of Steven Lee Jacobs* 91–93 & Ex. 6 (Oct. 25, 2023), SOAH Docket No. 582-23-22765, TCEQ Docket No. 2023-0265-MSW (Ex. 6, APP-00001854); Tex. Comm'n on Env't Quality, *Investigation Report*, Investigation No. 1945460, at 2 (Jan. 3, 2024); Tex. Comm'n on Env't Quality, *Groundwater Monitoring (GWM) – 2025 Tritium Sampling & 2024 Annual GWM Report*, Tracking Nos. 30883551 & 30891051, at 1–2 (Mar. 21, 2025); AECOM, *2025 Annual Groundwater Monitoring Report, Hawthorn Park Landfill, MSW (Type IV) Permit No. 2185*, §§ 2.1–2.2, at 2–3, § 5.1, at 6, §§ 5.2–5.3, at 7–8 (Feb. 13, 2026).

[54] 42 U.S.C. § 6903(3).

84. Continued placement of waste at Hawthorn, together with continuing leaking or leaching of waste-related constituents from Hawthorn, constitutes ongoing disposal within the meaning of 42 U.S.C. § 6903(3).

85. USA Waste continues to introduce arsenic and barium into the underground drinking water source beyond the solid waste boundary, or to increase their concentrations there, through the continuing leaking or leaching of waste-related constituents from Hawthorn into Layer II groundwater. The repeated arsenic and barium exceedances at MW-21 show a continuing violation of 40 C.F.R. § 257.3-4(a).

86. Thus, USA Waste's ongoing operation of Hawthorn affects the movement of groundwater through Layer II, the groundwater-bearing unit in which the arsenic and barium exceedances were detected. USA Waste's operation of that system therefore affects how groundwater moves through Layer II. Those changes also mean that a well's current designation as upgradient or downgradient does not, by itself, establish where groundwater constituents originated or how they moved over time.

87. USA Waste violates 40 C.F.R. § 257.3-4(a) by contaminating an underground drinking water source beyond the solid waste boundary. Because Hawthorn fails an applicable Part 257 criterion, Hawthorn is an open dump and its practices constitute open dumping under 40 C.F.R. § 257.1(a)(1) and (2), prohibited by 42 U.S.C. § 6945(a).

88. The groundwater violation injures and threatens Harris County's property interests and its interests in Tanner Road and the associated roadway, right-of-way, and drainage improvements described above.

89. Harris County seeks declaratory and injunctive relief requiring USA Waste to comply with 40 C.F.R. § 257.3-4(a) and to investigate and delineate the source, nature, extent, and

movement of groundwater contamination, including groundwater flow, migration pathways, point-of-compliance well designations, and the effects of depressurization and other operational activities on flow conditions; implement the source-control and corrective measures necessary to stop the continuing introduction or increase of arsenic and barium beyond the solid waste boundary; maintain reliable monitoring sufficient to verify compliance; and undertake the other measures necessary to prevent further contamination of the underground drinking water source, together with all other relief authorized by RCRA.

**Count III:**
**Imminent and Substantial Endangerment**
**42 U.S.C. § 6972(a)(1)(B)**

90. Harris County incorporates the prior paragraphs in support of this Count.

91. RCRA's 42 U.S.C. § 6972(a)(1)(B) authorizes a Citizen Suit against any person, including any past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste that may present an imminent and substantial endangerment to health or the environment.[55] The district court may restrain any such person, order such person to take such other action as may be necessary, or both.[56]

92. USA Waste is a corporation and therefore a "person" within the meaning of RCRA § 1004(15), 42 U.S.C. § 6903(15). USA Waste is the owner and operator of the Hawthorn Landfill, a solid waste disposal facility, and has owned and operated Hawthorn since 1994. USA Waste has accepted, handled, and disposed of solid waste at the Site. USA Waste continues to accept, handle, and dispose of solid waste at the Hawthorn Landfill, and it manages the waste mass and the systems

[55] 42 U.S.C. § 6972(a)(1)(B).

[56] 42 U.S.C. § 6972(a).

used to contain and control landfill gas, groundwater, drainage, and other conditions created by that waste.

93. The construction and demolition debris, brush, rubbish, industrial solid waste, and other discarded material disposed of at the Hawthorn Landfill constitute solid waste within the meaning of RCRA, 42 U.S.C. § 6903(27). That waste remains in place and continues to interact with the surrounding soil, groundwater, and subsurface environment.

94. The nature and composition of waste buried beneath portions of the Hawthorn Landfill are unknown. Some waste has been buried for nearly fifty years, and USA Waste cannot establish that all historical disposal areas are protected by effective liners. Waste in those areas can continue to generate leachate and landfill gas, affect groundwater, and impair the systems relied upon to contain it. Hawthorn has experienced each of those conditions.

95. USA Waste's past and present handling and disposal of solid waste at Hawthorn, including its continued management of decades-old waste as described below, present an imminent and substantial endangerment to health or the environment. That threat arises from recurring methane migration, unresolved groundwater impacts, uncertain liner protection across portions of the historical waste footprint, faulting, differential subsidence, and unstable ground that may impair containment systems, and the continued absence of final cover and final closure.

**A. Methane Generation and Migration**

96. Hawthorn's subsurface methane probes monitor whether landfill gas is migrating through the soil toward the property boundary. The probe results also provide information used to evaluate explosion risk and potential off-site migration. Repeated exceedances at those probes show recurring methane migration through the subsurface. When a boundary probe measures

methane above 5%, methane has reached the property boundary at or above its lower explosive limit.

97. USA Waste has long known that Hawthorn had a serious methane migration problem, that the exceedances were significant, and that years of remedial efforts failed to prevent additional exceedances. As alleged above and incorporated here, the waste at Hawthorn has generated methane at concentrations exceeding the regulatory limit at the property boundary since at least 1995, within a year after the Landfill received its permit.

98. TCEQ records show methane exceedances serious enough to require repeated corrective measures in 1997, 2002, 2003, 2008, 2010, 2011, 2013, 2016, 2023, 2024, and 2025 across all three sections of the Landfill.

99. The same pattern continued in 2023, 2024, and 2025. On December 20, 2023, GP-3 recorded methane at 32.5%. On March 13, 2024, GP-4 recorded methane at 13.4%. After GP-4 later achieved three consecutive compliant months and TCEQ authorized a return to quarterly monitoring, methane at GP-4 again exceeded the 5% limit in 2025, measuring 13.7% on February 14 and 12.2% on March 14. On July 30, 2025, GP-1AR measured 11.2% methane, or 8.3% after recalibration, and again exceeded the limit on August 4, 2025, at 6.0%. USA Waste responded to these recurring exceedances with additional remedial measures, including interceptor trenches, additional vertical landfill-gas vents near GP-4, solar-powered fans on the existing GP-1AR vent trench, and renewed monthly monitoring. USA Waste continues to rely on interceptor trenches, passive and powered vents, exhaust fans, and other controls to intercept and vent methane and limit its migration toward the property boundary.

100. Hawthorn's recurring methane exceedances, despite repeated remedial measures, show that its landfill-gas controls have not effectively prevented methane from escaping and migrating through the subsurface.

101. Hawthorn is surrounded by businesses, light industrial facilities, and residences. Methane that reaches the property boundary can continue to migrate through soil and along subsurface pathways, including utility corridors and drainage features, and can enter and accumulate in buildings, utility structures, and other enclosed spaces, where it presents a risk of fire and explosion. That risk is particularly significant because Harris County plans to make improvements to Tanner Road adjacent to the Hawthorn Landfill that include converting the existing roadside drainage system to an underground storm sewer. The project will require excavation, construction, inspection, and maintenance of subsurface drainage infrastructure in the Tanner Road corridor, creating a direct County interest in preventing methane from migrating into those work areas and underground structures. Because the waste mass continues to generate methane and the gas is not being adequately contained, those conditions present a threat of serious harm to the persons who live or work on the properties surrounding Hawthorn, to persons traveling along Tanner Road, and to the surrounding property.

102. Consequently, USA Waste has contributed and is contributing, through the methane generation and migration described in this Count, to the past and present handling, storage, and disposal of solid waste at the Hawthorn Landfill which may present an imminent and substantial endangerment to health or the environment within the meaning of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).

103. Harris County seeks declaratory and injunctive relief requiring USA Waste to abate the methane endangerment at Hawthorn, including by conducting a complete investigation of

methane generation and migration, identifying the sources and pathways of recurring migration, confirming the location and status of all boundary and near-boundary gas probes, implementing additional corrective measures and gas controls where necessary, and maintaining sufficient monitoring to determine whether those measures are effective. Harris County also seeks, as appropriate, final cover, final closure, and any other measures necessary to prevent methane generated by waste at Hawthorn from migrating to the property boundary and surrounding areas.

**B. Groundwater Conditions and Migration**

104. The groundwater conditions at Hawthorn are neither new nor limited to MW-21. USA Waste's 2025 Annual Groundwater Monitoring Report states that, since 2013, elevated concentrations of chloride, iron, specific conductance, total dissolved solids, and total organic carbon had been observed at MW-14, MW-18, MW-6, MW-17, MW-19, MW-20, and MW-21. The report also identified increasing concentrations of iron and total organic carbon at MW-21. The available monitoring therefore does not establish that the groundwater problems at Hawthorn are confined to MW-21.

105. The groundwater investigation expanded beyond Hawthorn's ordinary annual Type IV monitoring program in 2024. USA Waste tested MW-21 for additional metals and volatile organic compounds and detected arsenic, barium, chlorobenzene, and other constituents. Chlorobenzene had not been part of Hawthorn's routine annual groundwater monitoring program. After the 2024 detections, TCEQ directed USA Waste to include chlorobenzene in the MW-21 constituent list for the next annual monitoring event. The December 2025 event again detected chlorobenzene at 4.1 µg/L.

106. Those detections occurred in Layer II, the uppermost groundwater-bearing unit beneath Hawthorn. Arsenic is a federally regulated drinking-water contaminant. EPA has

established a maximum contaminant level of 0.010 mg/L for arsenic and a maximum contaminant level goal of zero. EPA identifies skin and circulatory-system damage and an increased risk of cancer among the potential health effects of long-term exposure above the drinking-water standard. Arsenic measured at MW-21 during 2024 ranged from 0.170 to 0.260 mg/L, approximately 17 to 26 times EPA's current drinking-water standard.

107. MW-21 lies on the western edge of the West Block, beyond the solid-waste boundary according to mapping. Arsenic and barium were detected there, while elevated concentrations of chloride, iron, specific conductance, total dissolved solids, and total organic carbon have been documented at MW-21 and other monitoring wells since 2013. These constituents were detected in Layer II groundwater at and around Hawthorn's waste footprint.

108. Water infiltrating and contacting waste disposed of at Hawthorn can generate or mobilize leachate and carry waste-related constituents into Layer II groundwater. The presence of waste-related constituents in Layer II groundwater demonstrates that groundwater protection at Hawthorn has not prevented those constituents from reaching the uppermost groundwater-bearing unit.

109. Groundwater beneath Hawthorn does not remain stationary or flow in a fixed direction. USA Waste acknowledges that operation of the Landfill's depressurization system has altered groundwater-flow direction and velocity. Groundwater carrying constituents therefore may migrate beyond the locations where those constituents have already been detected.

110. USA Waste has not delineated the full extent of the affected groundwater, determined the direction and rate of its migration over time, or established where that groundwater discharges. Those questions remain unresolved while the waste remains in place without final cover or final closure. The changing groundwater-flow conditions create a present risk that

affected groundwater may continue to migrate beyond monitored locations before that migration is detected and controlled.

111. USA Waste, as a past and present owner and operator of the Hawthorn Landfill, has contributed and is contributing to the past and present handling, storage, and disposal of solid waste at Hawthorn. That waste has affected groundwater beneath Hawthorn, and affected groundwater may continue to migrate through the subsurface. These circumstances may present an imminent and substantial endangerment to health or the environment within the meaning of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).

112. Harris County seeks declaratory and injunctive relief requiring USA Waste to investigate and abate the groundwater endangerment at Hawthorn, including by determining the nature and extent of affected groundwater, evaluating groundwater flow and migration pathways, identifying the sources of detected constituents, assessing the effects of depressurization and other Landfill operations on groundwater movement, and implementing any additional monitoring and corrective measures necessary to prevent further migration. Harris County also seeks, as appropriate, final cover, final closure, and any other measures necessary to protect groundwater and eliminate the endangerment.

**C. Delayed Closure and Lack of Final Cover**

113. The Landfill is at or near its permitted capacity and has remained largely inactive for years, but USA Waste has not finally closed it. No portion of Hawthorn has received final cover. All sections remain under intermediate cover while USA Waste continues to operate and modify gas-control, groundwater-monitoring, drainage, and depressurization systems and to accept a relatively small amount of waste each year.

114. Hawthorn's prolonged inactive status, without final cover or final closure, compounds the methane and groundwater problems described above. Decades-old waste remains in place beneath intermediate cover while USA Waste attempts to rely on gas-control, groundwater-monitoring, drainage, and depressurization systems to manage the effects of that waste.

115. USA Waste has anticipated Hawthorn's closure for years. In 2013, at USA Waste's request, SCS Engineers prepared a Business Closeout Plan projecting that Hawthorn would reach capacity in 2016, begin closure in 2017, and complete post-closure care in 2022. The plan identified the East and West Blocks as already filled and showed that the entire 62.1-acre Center Block and 24 acres of the East Block still lacked final cover.[57] Since 2017, Hawthorn has accepted only minimal amounts of waste each year.[58] In October 2023, Steve Jacobs, USA Waste's Area Director of Disposal Operations, testified that the West, East, and Center Blocks were basically inactive, that Hawthorn was at or nearing permitted capacity, and that Hawthorn's records had been moved to the Atascocita Landfill because Hawthorn no longer had an onsite structure to house them.[59]

---

[57] SCS Engineers, Business Closeout Plan, Hawthorn Park Reclamation Project 2, 5–6 (Aug. 2013) (APP-00014456, APP-00014459–60).

[58] Tex. Comm'n on Env't Quality, Municipal Solid Waste in Texas: A Year in Review, FY 2015 Data Summary and Analysis 43 (Oct. 2016) (AS-187/16); Tex. Comm'n on Env't Quality, Municipal Solid Waste in Texas: A Year in Review, 2016 Data Summary and Analysis 49 (Oct. 2017) (AS-187/17); Tex. Comm'n on Env't Quality, Municipal Solid Waste in Texas: A Year in Review, 2017 Data Summary and Analysis 49 (Oct. 2018) (AS-187/18); Tex. Comm'n on Env't Quality, Municipal Solid Waste in Texas: A Year in Review, 2018 Data Summary and Analysis 55 (Sept. 2019) (AS-187/19); Tex. Comm'n on Env't Quality, Municipal Solid Waste in Texas: A Year in Review, 2019 Data Summary and Analysis 55 (rev. Nov. 2020) (AS-187/20); Tex. Comm'n on Env't Quality, Municipal Solid Waste in Texas: A Year in Review, 2020 Data Summary and Analysis 57 (Sept. 2021) (AS-187/21); Tex. Comm'n on Env't Quality, Municipal Solid Waste in Texas: A Year in Review, 2021 Data Summary and Analysis 57 (Sept. 2022) (AS-187/22); Tex. Comm'n on Env't Quality, Municipal Solid Waste in Texas: A Year in Review, 2022 Data Summary and Analysis 59 (Sept. 2023) (AS-187/23); Tex. Comm'n on Env't Quality, Municipal Solid Waste in Texas: A Year in Review, 2023 Data Summary and Analysis 61 (Sept. 2024) (AS-187/24).

[59] See Jacobs Dep. 25:1–16, 33:13–19, 110:22–111:23, 147:15–148:3, 162:16–163:2; Lehrmann Dep. 57:1–23, 61:21–62:24, 66:13–67:6; Rivette Dep. 44:11–21, 47:13–48:8; 2016-2024 MSW Annual Year in Review.

116. USA Waste continues to operate Hawthorn in a limited capacity under intermediate cover rather than final cover and final closure. Intermediate cover does not provide the permanent infiltration control, containment, stabilization, and long-term maintenance provided by final closure. Until USA Waste installs final cover and closes the Hawthorn Landfill, water can continue to come into contact with buried waste and carry waste-related constituents into surrounding soil and groundwater, while the waste continues to generate landfill gas.

117. The risks are current and ongoing. The Hawthorn Landfill recorded methane exceedances in 2023, 2024, and 2025, and groundwater monitoring in 2024 and 2025 detected arsenic, barium, chlorobenzene, and other constituents in the uppermost groundwater-bearing unit. USA Waste continues to operate and modify gas-control, groundwater-monitoring, drainage, and depressurization systems in response to those problems. Hawthorn therefore continues to rely on interim and remedial measures rather than the permanent containment and long-term maintenance provided through final closure.

118. The risks extend beyond the buried waste. Methane generated by the waste has repeatedly reached the Landfill boundary, and affected groundwater may migrate beyond the waste footprint into adjacent subsurface areas, property, roadway, and drainage features. Harris County owns property across Tanner Road from Hawthorn and maintains drainage infrastructure that receives drainage from the Landfill, including subsurface infrastructure where migrating methane could accumulate and groundwater could reach points of human contact.

119. The waste at the Hawthorn Landfill continues to create risks that can extend beyond the Landfill, including methane migration and groundwater impacts that may affect Harris County property and infrastructure. USA Waste, as Hawthorn's past and present owner and operator, has contributed and is contributing to the past and present handling, storage, and disposal of solid

waste by leaving that waste in place without final cover or final closure. Those circumstances may present an imminent and substantial endangerment to health or the environment within the meaning of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).

120. Harris County seeks declaratory and injunctive relief requiring USA Waste to place Hawthorn into final closure, install final cover, and implement the long-term controls and maintenance necessary to contain the waste and protect surrounding property and groundwater. Harris County also seeks any interim measures necessary to address methane migration, groundwater impacts, and other risks while final closure is completed.

**D. Legacy Disposal Areas and Unresolved Liner Conditions**

121. Hawthorn's footprint developed as long as 60 years ago with borrow activity, sand mining, and unauthorized dumping.

122. Steve Jacobs, Area Director of Disposal Operations, testified that he had no knowledge of liners beneath the West Block nor did he have firsthand knowledge whether liners exist beneath the East Block. Heather Lehrmann, Director of Environmental Protection and Compliance, likewise could not identify which portions of the permitted disposal area have compacted clay liners or what liner requirements applied when the different portions of Hawthorn were constructed and operated.

123. Portions of Hawthorn's historical waste footprint, including the West Block, may lack an effective liner, in-situ soil protection, or other measures that protect groundwater. Since 1994, USA Waste has disposed of and managed waste in those areas and in adjacent areas as part of its operation of Hawthorn.

124. Because waste remains in portions of the Hawthorn Landfill that may lack effective liner protection, water can contact that waste and carry waste-related constituents into surrounding

soil and groundwater. That risk is current and continuing. Groundwater monitoring in 2024 detected arsenic, barium, and chlorobenzene in Layer II at MW-21, a point-of-compliance well on the western boundary of the Landfill. The December 2025 annual monitoring again detected chlorobenzene there. Water contacting that waste can continue to carry constituents into and through the surrounding soil and groundwater.

125. Consequently, USA Waste is a person that, as a past and present owner and operator of a solid waste disposal facility, has contributed and is contributing, through the legacy disposal areas and liner conditions described in this section, to the past and present handling, storage, and disposal of solid waste at the Hawthorn Landfill which may present an imminent and substantial endangerment to health or the environment within the meaning of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).

126. Harris County seeks declaratory and injunctive relief requiring USA Waste to determine and document the liner and other groundwater protection beneath Hawthorn's historical waste areas, identify any areas that lack effective protection, and implement the measures necessary to prevent waste-related constituents from entering or migrating through surrounding soil and groundwater.

**E. Faulting, Subsidence, and Unstable-Area Risks**

127. The Brittmoore Fault lies near the northwest of Hawthorn's permit boundary. In 1993, McBride-Ratcliff and Associates investigated faulting at the proposed facility by drilling thirty-two test holes to depths of approximately 300 feet along the facility perimeter. The investigation placed the surface trace of the Brittmoore Fault approximately 1,850 feet northwest

of the proposed facility's northwest corner.[60] That investigation occurred before the East, West, and Center Blocks were consolidated under Permit No. 2185 and before waste cells were constructed in the Center Block after 1994. The regulatory record shows no comparable subsurface investigation has been done since 1993.

128. Since 1993, published LiDAR studies have mapped more than 300 active surface faults in the Houston metropolitan area. U.S. Army Corps of Engineers review materials also report movement of approximately 12.5 to 16.5 millimeters per year along the Brittmoore Fault where it crosses the Addicks Dam alignment.[61] These later studies and measurements were not available when McBride-Ratcliff investigated Hawthorn in 1993.

129. TCEQ regulations address the risk that faulting, subsidence, and unstable ground can damage landfill containment systems. They require investigation of faulting and subsidence under specified conditions and engineering measures to protect structural components in unstable areas.[62]

130. Fault movement, subsidence, or unstable ground could compromise the integrity of the Landfill as a whole, alter gas and groundwater migration pathways, and allow waste, landfill gas, leachate, or waste-related constituents to move in ways that Hawthorn's existing controls and monitoring may not detect or contain. The consequences could threaten surrounding property, groundwater, roadway and drainage infrastructure, nearby businesses and residences, and persons who live, work, travel, or perform construction and maintenance in the area.

---

[60] Richard M. Engelkemeir & Shuhab D. Khan, *Lidar Mapping of Faults in Houston, Texas, USA*, 4 Geosphere 170 (2008), doi:10.1130/GES00096.1; Shuhab D. Khan et al., *Surface Deformation Analysis of the Houston Area Using Time Series Interferometry and Emerging Hot Spot Analysis*, 14 Remote Sensing 3831 (2022), doi:10.3390/rs14153831.

[61] U.S. Army Corps of Engineers, Addicks and Barker Dams Independent External Peer Review, Final Comment-Response Record.

[62] See 30 TAC §§ 330.555, 330.559.

131. USA Waste has continued to handle and manage waste at Hawthorn without conducting a current, site-specific subsurface investigation to determine whether faulting, subsidence, or unstable ground threatens the Landfill's containment and control features. The only comparable subsurface investigation in the regulatory record dates to 1993, before the East, West, and Center Blocks were consolidated under Permit No. 2185 and before waste cells were constructed in the Center Block. By continuing to manage the waste under those conditions without determining whether present faulting, subsidence, or unstable-ground conditions threaten containment, USA Waste has contributed and is contributing to the handling and disposal of solid waste in a manner that may present an imminent and substantial endangerment to health or the environment within the meaning of RCRA § 7002(a)(1)(B), 42 U.S.C. § 6972(a)(1)(B).

132. Harris County seeks declaratory and injunctive relief requiring USA Waste to conduct a current, site-specific investigation of faulting, subsidence, and unstable ground across Hawthorn's waste footprint, determine whether those conditions threaten the integrity of the Landfill's containment and control systems, and implement any measures necessary to protect those systems and prevent landfill gas, leachate, or waste-related constituents from escaping and migrating into surrounding soil or groundwater.

## VIII.
## REQUEST FOR RELIEF

Harris County respectfully requests that the Court enter judgment for Harris County and against USA Waste, and:

A. Declare that USA Waste has violated and is in violation of 40 C.F.R. §§ 257.1 and 257.3-8(a)(2) and 42 U.S.C. § 6945(a), in that methane generated by the Hawthorn Landfill has repeatedly exceeded the lower explosive limit at the property boundary;

B. Declare that USA Waste has violated and is in violation of 40 C.F.R. §§ 257.1 and 257.3-4(a) and 42 U.S.C. § 6945(a), in that the Hawthorn Landfill contaminates an underground drinking water source beyond the solid waste boundary;

C. Declare that USA Waste has contributed and is contributing to the past and present handling, storage, and disposal of solid waste at the Hawthorn Landfill which may present an imminent and substantial endangerment to health or the environment within the meaning of 42 U.S.C. § 6972(a)(1)(B);

D. Restrain USA Waste from handling, storing, and disposing of solid waste at the Hawthorn Landfill in a manner that may present an imminent and substantial endangerment to health or the environment;

E. Order USA Waste to comply with 40 C.F.R. §§ 257.3-8(a)(2) and 257.3-4(a);

F. Order USA Waste to complete final closure and final cover of the Hawthorn Landfill;

G. Order USA Waste to conduct a complete methane investigation and implement a corrective-action program; install additional gas controls and monitoring points where necessary; and confirm the exact locations and status of all boundary and near-boundary gas probes;

H. Order USA Waste to conduct a complete and reliable evaluation of groundwater conditions, groundwater flow, source attribution, migration pathways, point-of-compliance well designations, and the effects of depressurization or other operational activities on flow conditions; investigate and delineate the source, nature, extent, and movement of groundwater contamination; implement the source-control and corrective measures necessary to stop the continuing

introduction or increase of arsenic and barium beyond the solid waste boundary; and maintain reliable monitoring sufficient to verify compliance;

I. Order USA Waste to delineate legacy waste, mined pits, unlined areas, and pre-Subtitle D disposal units within the Hawthorn Landfill, and to address containment deficiencies identified in those areas;

J. Order USA Waste to conduct a current site-specific fault, subsidence, and unstable-area investigation addressing the Brittmoore Fault and Hawthorn Landfill's complete historical and permitted waste footprint;

K. Order USA Waste to preserve and produce its waste acceptance and all legally required classification records for Hawthorn Landfill and other relevant records;

L. Order USA Waste to take all other measures necessary to eliminate the imminent and substantial endangerment and bring the Hawthorn Landfill into compliance with applicable law, and to maintain and verify the effectiveness of those measures;

M. Retain jurisdiction over this action until USA Waste has completed the relief ordered;

N. Award Harris County its costs of litigation, including reasonable attorney and expert witness fees, under 42 U.S.C. § 6972(e); and

O. Grant Harris County all other relief authorized by RCRA, including any applicable civil penalties or fines payable to the United States, and such further relief as the Court deems just and proper.

Respectfully submitted,

ABBIE KAMIN
Harris County Attorney

NEAL A. SARKAR
First Assistant County Attorney

SARAH J. UTLEY
Managing Counsel,
Affirmative and Special Litigation and
Environmental

BETHANY DWYER
Deputy Division Director, Environmental

By: */s/ Natalia Leon*
Natalia Leon
Assistant County Attorney
Environmental Division
State Bar No. 24109113
SDTX Fed. Bar No. 3970892
Natalia.Leon@harriscountytx.gov
Tel: (713) 274-5326
Elizabeth Hidalgo
Assistant County Attorney
State Bar No. 24133308
SDTX Fed. Bar No. 3965000
Elizabeth.Hidalgo@harriscountytx.gov
1010 Lamar, 11th Floor
Houston, Texas 77002

**Baker Wotring LLP**

/s/ *Earnest W. Wotring*
**Earnest W. Wotring**
**Attorney-in-Charge**
Texas Bar No. 22012400
SDTX Fed. Bar No. 15284
Debra Tsuchiyama Baker
Texas Bar No. 15089600
SDTX Fed. Bar No. 6943
Tammy J. Jones
Texas Bar No. 10959075
SDTX Fed, Bar No. 13217
Marshall S. Campbell

Texas Bar No. 03713200
SDTX Fed. Bar No. 3842778
JPMorgan Chase Tower, Suite 6400
600 Travis Street
Houston, Texas 77002
Telephone: (713) 980-1700
dbaker@bakerwotring.com
ewotring@bakerwotring.com
tjones@bakerwotring.com

**ATTORNEYS FOR HARRIS COUNTY, TEXAS**